IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Michael A. Dolan, | ) | C/A No.: 1:09-343-JFA-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Detective Doug Curry and Agent B.A. Asbill, | ) | |
| Defendants. | ) | |

Plaintiff has brought this action pursuant to 42 U.S.C § 1983, alleging Defendants violated his constitutional rights. Before the court is Defendants' Motion for Summary Judgment [Entry #27]. All pretrial proceedings in this case were referred to the undersigned for pretrial management. Because the motion for summary judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.  Factual and Procedural Background

Plaintiff filed his complaint in this action on February 10, 2009. Defendants moved for summary judgment on February 3, 2010. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted.

This matter arises from an undercover drug deal that took place on August 31, 2007. The following facts are undisputed unless otherwise indicated. Prior to August 31, 2007, Defendant Asbill, an agent of the South Carolina State Law Enforcement Division

("SLED") was conducting an undercover investigation of illegal narcotics sales by Harlon Ray Capehart. (Asbill Aff. at Entry #27-3). During the course of this investigation, Cherokee County Sheriff's Deputy David Oglesby contacted Asbill regarding information he received from a confidential informant. *Id.* According to Oglesby, his informant indicated he could make drug deals with Capehart, a reputed member of the Warlocks outlaw motorcycle gang. (Oglesby Aff. at Entry #27-5). Oglesby contacted Asbill to assist with conducting undercover drug buys from Capehart using the confidential informant. *Id.*

The informant and Capehart had several conversations concerning the sale of large quantities of marijuana. *Id.* Eventually, a deal was struck for the purchase, by Capehart, of over 100 pounds of marijuana. Deputy Oglesby attempted to have the deal occur in Cherokee County. *Id.* Capehart indicated he could not do the deal in Cherokee County because he had a "money man" who was providing the currency for the purchase. (Asbill Aff. at Entry #27-3). Capehart indicated that his money man would not "front" the money to him. *Id.* Capehart also indicated his money man lived in the Columbia area and was not willing to drive to Cherokee County. During the course of the negotiations for the deal, Oglesby and Asbill learned the money man worked at a Columbia-area car dealership and could only do the deal during his lunch hour or after work. *Id.*

At some point prior to the transaction, Asbill contacted Lexington County Sheriff's Deputy Byron Snellgrove to inform him that an undercover drug deal might occur in Lexington County. (Snellgrove Aff. at Entry #27-6). On August 31, 2007, Asbill again

contacted Snellgrove and asked him for assistance at the buy location. *Id.* The exchange was scheduled for lunch time at a gas station located on Charleston Highway within Lexington County. *Id.* Snellgrove went to a parking lot adjacent to the gas station. *Id.*

Deputy Oglesby drove a Jeep SUV containing over 100 pounds of marijuana to the gas station. (Oglesby Aff. at Entry #27-5). The confidential informant drove separately. *Id*. Upon arrival at the gas station, Oglesby parked his vehicle, got out and walked inside the business. *Id*. Capehart and Plaintiff were parked on the opposite side of the parking lot and drove over to a parking space beside the SUV containing the drugs. *Id*. The informant parked his vehicle, got out and walked over to SUV containing the drugs. *Id*. Capehart got out of his car and talked to the informant. *Id*.

Following Capehart's delivery of the money to the informant,[1] Defendant Asbill and other law enforcement officers moved in and took custody of Plaintiff and Capehart. Both Capehart and Plaintiff were ultimately charged with trafficking marijuana in excess of one hundred pounds. When Plaintiff was arrested, he asked that someone let the car dealership know of his arrest.

According to Snellgrove, who is not a party to this matter, he mistakenly believed Plaintiff was the target of the drug investigation. (Snellgrove Aff. at Entry #27-6). Based

---

[1] According to the informant, but disputed by Plaintiff, Plaintiff asked him if the "weight" of the drugs was correct. (Informant Aff. at Entry #27-4). The informant told Plaintiff the weight was probably in excess of what had been agreed upon. According to Defendants, Plaintiff handed a bag to Capehart who then handed it to the informant. *Id*.; *see also*, Asbill Aff. The bag contained over twenty thousand dollars in cash. However, because these facts are disputed, the undersigned has not considered them in the below analysis.

on this belief, as well as Plaintiff's presence and participation in the drug purchase, he believed there was probable cause to arrest Plaintiff for the crime of trafficking marijuana. *Id.* Snellgrove further believed that a search of Plaintiff's residence would locate and preserve additional evidence of Plaintiff's participation in illegal drug distribution. *Id.* With this belief, he telephoned Defendant Doug Curry, who was at the Lexington County Sheriff Department during Plaintiff's arrest of Plaintiff. *Id.* Snellgrove relayed to Curry his understanding of the drug investigation and requested Curry prepare a search warrant for Plaintiff's residence in Lexington County. *Id.* With the information received from Snellgrove, including that Plaintiff had been the target of a drug investigation, Curry prepared a search warrant for Plaintiff's residence and presented the warrant to Judge Jamie Lucas. Judge Lucas found probable cause to issue the search warrant and signed it. *Id.*

With the search warrant in hand, Defendant Curry drove to Plaintiff's residence and, with the assistance of other law enforcement officers, searched it. (Curry Aff. at Entry #27-2). During the search, Curry and other officers located a small quantity of processed marijuana, a live marijuana plant, marijuana processing and packaging equipment, supplies for the growing and propagation of marijuana plants, over sixteen thousand dollars in cash separately bundled and named, a photo album depicting growing marijuana plants, and two handguns. *Id.*

As a result of the search of Plaintiff's residence, Defendant Curry prepared an arrest warrant charging Plaintiff with manufacturing marijuana in violation of South

Carolina law. *Id.* The warrant was served on Plaintiff while he was already incarcerated at the Lexington County Detention Center on the trafficking charge previously made by Defendant Asbill. *Id.* Plaintiff was subsequently indicted by the grand jury in federal court. *Id.* Plaintiff testified in his deposition that he forfeited the sixteen thousand dollars seized during the search of his residence in exchange for the United States Attorney's dismissal of the charges pending against him. (*See* Dolan Dep. Excerpts at Entry #27-8). Plaintiff has now brought suit against Defendants Asbill and Curry, alleging various state law and constitutional violations stemming from his arrest on August 31, 2007.

II.     Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant

must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation ... is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

In deciding a summary judgment motion, the court must look beyond the pleadings and determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the

lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III. Analysis

    A. Plaintiff's Arrest on August 31, 2007

Plaintiff's complaint first alleges that Defendants unlawfully seized him in violation of his Fourth Amendment rights during the arrest on August 31, 2007.[2] Defendants claim that they had probable cause to arrest Plaintiff.

The standard to determine the lawfulness of an arrest is whether probable cause existed. *Park v. Shiflett*, 250 F.3d 843 (4th Cir. 2001). When a court examines the existence of probable cause, it will "examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (citations omitted). In order to show probable cause, there only needs to be "enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed." *Id.* "Probable cause requires more than bare suspicion but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998). As a result, in order to prove an absence of probable cause, the Plaintiff "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" the Plaintiff was

---

[2] Plaintiff alleges Curry was present at the arrest, although he provides no evidence that Curry was present.

involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002). To make the probable cause determination, a court should consider "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Gantt v. Whitaker*, 57 Fed.Appx. 141 (4th Cir. 2003) (unpublished opinion) (citing *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). The Fourth Circuit has held:

> Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken. ... This is a fact-specific inquiry.... [I]n order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government ... is not that they always be correct, but that they always be reasonable.

*Mazuz v. Maryland*, 442 F.3d 217, 224 (4th Cir. 2006) (internal citations omitted).

Here, Defendants had probable cause to arrest Plaintiff. It is undisputed that Capehart told the informant that he could not do the deal in Cherokee County because he had a "money man" who would not "front" him the money or drive that far. Therefore, based on the schedule of the money man who worked at a car dealership, a meeting was set up for lunchtime on August 31, 2007. Although Plaintiff claims that he "went to Wendy's for lunch and just ran into [Capehart]," it is undisputed that he was in the passenger seat of Capehart's car at the time of the drug deal, and that Capehart had previously told the informant his money man would be with him. A reasonable officer would conclude that Plaintiff was the "money man" and that he had probable cause to

arrest Plaintiff. Thus, after viewing the facts in the light most favorable to Plaintiff, Plaintiff has not alleged a set of facts making it unjustifiable for Defendants to conclude Plaintiff was involved in the charged offense.

B.   Search of Plaintiff's Home

Plaintiff contends that the search of his residence was unlawful and in violation of his Fourth Amendment rights due to alleged defects in the search warrant affidavit. Specifically, Plaintiff contends the warrant affidavit is inaccurate as he was not the "target" of an ongoing drug investigation.

In order to state a Fourth Amendment claim based on an inaccurate affidavit for a warrant, Plaintiff must prove Defendant Curry "deliberately or with a 'reckless disregard for the truth' made material false statements in his affidavit or omitted from the affidavit 'material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading.'" *Miller v. Prince George's County, Md*, 475 F.3d 621, 627 (4th Cir. 2007) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *U.S. v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990)). To show the "reckless disregard" element, Plaintiff must set forth evidence that Curry "acted with a high degree of awareness of a statement's probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statement or had obvious reasons to doubt the accuracy of the information he reported." *Miller*, at 627 (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)).

If Plaintiff can show reckless indifference, he must also show that the false statements or omissions were "material, that is, necessary to the neutral and disinterested magistrate's finding of probable cause." *Miller* at 628. To be material, the court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* Critically, "[i]f the 'corrected' warrant affidavit establishes probable cause, no civil liability lies against the officer." *Id.*

Here, Plaintiff has shown no proof that Defendant Curry knew his statements were inaccurate or acted with deliberate disregard for the truth. There is no evidence that Curry had doubts, serious or otherwise, as to the truth of his statement, or that he should have. Plaintiff has set forth no evidence tending to show Curry had any reason to believe the affidavit was inaccurate. "[I]nformation received from other law enforcement officials during the course of an investigation is generally presumed to be reliable." *U.S. v. Yusuf*, 461 F.3d 374, 385 (3d Cir. 2006) (citing *United States v. Ventresca*, 380 U.S. 102, 111 (1965) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."); *United States v. Hodge*, 246 F.3d 305, 311 (4th Cir. 2004) ("[S]tatements of other law enforcement officers 'are plainly ... reliable' even without any special showing."); *United States v. Meade*, 110 F.3d 190, 193 (1st Cir. 1997) ("[L]aw enforcement officials cooperating in an investigation are entitled to rely upon each other's knowledge of facts when forming the conclusion that a suspect has committed or is

committing a crime."); *United States v. Davis*, 557 F.2d 1239, 1247 (8th Cir. 1977) (finding that a DEA agent was entitled to rely upon information provided to him by a Minneapolis police officer in submitting an affidavit for probable cause).[3]

Therefore, because Plaintiff has not set forth any proof that Defendant Curry acted deliberately or with disregard for the truth when he presented the affidavit to the magistrate judge, Plaintiffs have not shown that Defendants violated Plaintiff's Fourth Amendment rights.

C. Arrest Warrant for Manufacturing of Marijuana

Plaintiff claims the arrest warrant for manufacturing marijuana violates his Fourth Amendment rights, because it was obtained by illegal and inadmissible evidence, presumably the evidence found as a result of the search of Plaintiff's home. However, as discussed above, the search of Plaintiff's home was conducted pursuant to a warrant that was procured legally, although it was later discovered by Defendant Curry that some of the information contained therein was inaccurate. Therefore, the fruits of Defendants' search, which included a marijuana plant, cash bundled in stacks with different names, a seed separator, a grinder, two sets of electronic scales, a marijuana bong and pipe, and a

---

[3] The court recognizes the line of cases beginning with *Whiteley v. Warden*, 401 U.S. 560 (1971), which hold that reliance upon another officer's assertion that probable cause exists to make an arrest does not determine conclusively whether the arrest was legal. *See id.* at 568 (stating that "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest"). We are faced with a different analysis in this case. Here, the focus is on Agent Curry's mental state when he submitted the affidavit to the magistrate judge, not whether the law enforcement system as a whole has complied with the requirements of the Fourth Amendment.

quantity of processed marijuana, may be used to show probable cause for an arrest warrant.

Furthermore, Plaintiff was indicted by the federal grand jury. Plaintiff and Capehart were indicted in a multi-count indictment in *United States v. Capehart, et al.*, Criminal Action # 3:08-554-JFA. This indictment included a finding that Plaintiff was most probably engaged in the manufacture, storage, and possession of a controlled substance. The grand jury's true bill is prima facie evidence of probable cause, and Plaintiff has not presented evidence rebutting the same. *Beavers v. Henkel*, 194 U.S. 73, 85 (1904) ("indictment is prima facie evidence of the existence of probable cause."). Therefore, Plaintiff has simply failed to set forth any evidence demonstrating Defendants violated Plaintiff's rights with regard to the arrest warrant for manufacturing marijuana.

    D.    Conspiracy

In order to demonstrate a conspiracy claim, Plaintiff must affirmatively allege and set forth evidence of an underlying constitutional violation, and he has failed to do so. However, in the event that the district judge disagrees with the above analysis regarding Plaintiff's Fourth Amendment claims, the undersigned analyzes Plaintiff's remaining claims as follows.

"[T]o establish a civil conspiracy under § 1983, plaintiff must show that defendants acted in concert in furtherance of the conspiracy which resulted in plaintiff's deprivation of a constitutional right. In order 'to survive a properly supported summary judgment motion, [plaintiff's] evidence must, at least, reasonably lead to the inference

that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.'" *Robinson v. Metts*, 86 F.Supp.2d 557, 563 (D.S.C. 1997) (citing *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996)). "In addition, a claim for civil conspiracy must allege additional facts in furtherance of a conspiracy rather than reallege other claims. Where [t]he only alleged wrongful acts plead are those for which damages have already been sought, plaintiff's claim for civil conspiracy fails." *Robinson v. Metts*, 86 F.Supp.2d 557, 563 (D.S.C. 1997) (internal quotation and citations removed) (citing *Sharpe v. Long*, 842 F.Supp. 197, 201 (D.S.C. 1992)). In other words, "[p]laintiff may not merely incorporate by reference the alleged acts of defendants from his preceding allegations … to support his claim [and] merely add[ing] conclusory allegations that defendants were engaged in a conspiracy." *Id*.

Plaintiff must be able to demonstrate "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, *supra* at 421. Speculation and conjecture are insufficient to demonstrate a conspiratorial agreement. There must be evidence of an overt act "done in furtherance of the conspiracy, which resulted in [the] deprivation of a constitutional right." *Kollyns v. Doe*, 2003 WL 22937925 (D.S.C. 2003) (unpublished) (citing *Hinkle*, *supra* at 421).

In addition, Plaintiff asserts a conspiracy claim pursuant to 42 U.S.C. § 1985. Section 1985(3) provides in relevant part: "If two or more persons ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws, ... the party so injured or deprived may have an action for the recovery of damages

occasioned by such injury or deprivation, against any one or more of the conspirators." Established precedent in the Fourth Circuit states that officials of a single governmental entity acting in their official capacities cannot "conspire" among themselves or with the entity within the meaning of § 1985(3).  *Buschi v. Kirvin*, 775 F.2d 1240, 1251-1253 (4th Cir. 1985); *Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364, 1371 (4th Cir. 1989); *Eggleston v. Prince Edward Volunteer Rescue Squad*, 569 F.Supp. 1344, 1352 (E.D.Va. 1983), *aff'd*, 742 F.2d 1448 (4th Cir. 1984).

Here, Plaintiff has failed to allege facts demonstrating a conspiracy or submit any evidence for the same.  In fact, Plaintiff has not shown that there was any communication whatsoever between Defendants during the course of Plaintiff's arrest for trafficking marijuana or the procurement of the search warrant. Because Plaintiff has not asserted any substantive acts in furtherance of the alleged conspiracies, and the record fails to reflect any conspiracy, these claims must be dismissed as a matter of law.

E.    Malicious Prosecution

In order "to maintain an action for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage." *Parrott v. Plowden Motor Co.*, 143 S.E.2d 607, 608 (S.C. 1965); *Eaves v. Broad River Elec. Co-op., Inc.*, 289 S.E.2d 414, 415 (S.C. 1982). "An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a

preponderance of the evidence, including malice and lack of probable cause." *Law v. South Carolina Dept. of Corrections*, 629 S.E.2d 642, 648 (S.C. 2006), citing *Parrott*, 143 S.E.2d at 609. "The burden is on the plaintiff to show that the prosecuting person or entity lacked probable cause to pursue a criminal or civil action against him." *Parrott*, 143 S.E.2d at 609. "Malice is defined as "the deliberate intentional doing of an act without just cause or excuse." *Law v. South Carolina Dept. of Corrections*, 629 S.E.2d 642, 649 (S.C. 2006).

Plaintiff cannot prove the elements necessary for malicious prosecution. As discussed above, Defendants had probable cause to arrest Plaintiff. Furthermore, Plaintiff was indicted by a grand jury, which is evidence of probable cause. *Law v. South Carolina Dept. of Corrections*, 629 S.E.2d 642, 649 (S.C. 2006) ("South Carolina has long embraced the rule that a true bill of indictment is prima facie evidence of probable cause in an action for malicious prosecution."); *Green v. Watson*, 2008 WL 3318872, 6 (D.S.C. 2008) (unpublished) ("A true bill of indictment is prima facie evidence of probable cause in an action for malicious prosecution."). Plaintiff has similarly failed to produce any evidence of malice by Defendants, save for his own conclusory allegations. Plaintiff has failed to set forth the allegations or proof necessary to prove malicious prosecution.

F.     Fourteenth Amendment Claims

According to Plaintiff's brief, "This [due process] cause should properly have been designated as a derivative of the First Cause of Action for Fourth Amendment violation for continuing prosecution without probable cause [and] withholding the truth that

Capehart and not Plaintiff had been negotiating for the purchase of marijuana." (Pl.'s br. at Entry #31, p. 5). Therefore, it appears that Plaintiff has no independent due process claim. Regardless, Plaintiff has failed to set forth any allegations demonstrating a violation of his Fourteenth Amendment Rights. Plaintiff's due process claims should therefore be dismissed.

    G.    Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526

U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an

objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

IV.     Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #27] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

*[Signature: Shiva V. Hodges]*

August 6, 2010
Florence, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**