UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| Michael A. Dolan, | ) | C/A No. 1:09-343-JFA-SVH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| Detective Doug Curry; and Agent B.A. Asbill, | ) | |
| Defendants. | ) | |

The plaintiff, Michael A. Dolan, brings this action pursuant to 42 U.S.C. § 1983. He raises claims of various constitutional violations relating to the defendants' arrest of the plaintiff and the subsequent search of his home.

The Magistrate Judge assigned to this action[1] has prepared a comprehensive Report and Recommendation and opines that the defendants' motion for summary judgment should be granted. The Report sets forth in detail the relevant facts and standards of law on this matter, and the court incorporates such without a recitation.

The plaintiff was advised of his right to file objections to the Report and Recommendation, which was entered on the docket on August 6, 2010. Counsel for the plaintiff filed timely objections to the Report.

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1).

1

The plaintiff's claims center around an undercover drug deal on August 31, 2007 involving illegal narcotics sales by Harlon Ray Capehart. The facts, taken in the light more favorable to the plaintiff (and as recited in the Magistrate Judge's Report and Recommendation) are as follows:

> Prior to August 31, 2007, Defendant Asbill, an agent of the South Carolina State Law Enforcement Division ("SLED") was conducting an undercover investigation of illegal narcotics sales by Harlon Ray Capehart. (Asbill Aff. at Entry #27-3). During the course of this investigation, Cherokee County Sheriff's Deputy David Oglesby contacted Asbill regarding information he received from a confidential informant. *Id.* According to Oglesby, his informant indicated he could make drug deals with Capehart, a reputed member of the Warlocks outlaw motorcycle gang. (Oglesby Aff. at Entry #27-5). Oglesby contacted Asbill to assist with conducting undercover drug buys from Capehart using the confidential informant. *Id.*
>
> The informant and Capehart had several conversations concerning the sale of large quantities of marijuana. *Id.* Eventually, a deal was struck for the purchase, by Capehart, of over 100 pounds of marijuana. Deputy Oglesby attempted to have the deal occur in Cherokee County. *Id.* Capehart indicated he could not do the deal in Cherokee County because he had a "money man" who was providing the currency for the purchase. (Asbill Aff. at Entry #27-3). Capehart indicated that his money man would not "front" the money to him. *Id.* Capehart also indicated his money man lived in the Columbia area and was not willing to drive to Cherokee County. During the course of the negotiations for the deal, Oglesby and Asbill learned the money man worked at a Columbia-area car dealership and could only do the deal during his lunch hour or after work. *Id.*
>
> At some point prior to the transaction, Asbill contacted Lexington County Sheriff's Deputy Byron Snellgrove to inform him that an undercover drug deal might occur in Lexington County. (Snellgrove Aff. at Entry #27-6). On August 31, 2007, Asbill again contacted Snellgrove and asked him for assistance at the buy location. *Id.* The exchange was scheduled for lunch time at a gas station located on Charleston Highway within Lexington County. *Id.* Snellgrove went to a parking lot adjacent to the gas station. *Id.*
>
> Deputy Oglesby drove a Jeep SUV containing over 100 pounds of marijuana to the gas station. (Oglesby Aff. at Entry #27-5). The confidential informant drove separately. *Id*. Upon arrival at the gas station, Oglesby parked his vehicle, got out and walked inside the business. *Id.* Capehart and Plaintiff were parked on the opposite side of the parking lot and drove over to a parking space beside the SUV

2

containing the drugs. *Id*. The informant parked his vehicle, got out and walked over to SUV containing the drugs. *Id*. Capehart got out of his car and talked to the informant. *Id*.

Following Capehart's delivery of the money to the informant,[2] Defendant Asbill and other law enforcement officers moved in and took custody of Plaintiff and Capehart. Both Capehart and Plaintiff were ultimately charged with trafficking marijuana in excess of one hundred pounds. When Plaintiff was arrested, he asked that someone let the car dealership know of his arrest.

According to Snellgrove, who is not a party to this matter, he mistakenly believed Plaintiff was the target of the drug investigation. (Snellgrove Aff. at Entry #27-6). Based on this belief, as well as Plaintiff's presence and participation in the drug purchase, he believed there was probable cause to arrest Plaintiff for the crime of trafficking marijuana. *Id.* Snellgrove further believed that a search of Plaintiff's residence would locate and preserve additional evidence of Plaintiff's participation in illegal drug distribution. *Id.* With this belief, he telephoned Defendant Doug Curry, who was at the Lexington County Sheriff Department during Plaintiff's arrest of Plaintiff. *Id.* Snellgrove relayed to Curry his understanding of the drug investigation and requested Curry prepare a search warrant for Plaintiff's residence in Lexington County. *Id.* With the information received from Snellgrove, including that Plaintiff had been the target of a drug investigation, Curry prepared a search warrant for Plaintiff's residence and presented the warrant to Judge Jamie Lucas. Judge Lucas found probable cause to issue the search warrant and signed it. *Id.*

With the search warrant in hand, Defendant Curry drove to Plaintiff's residence and, with the assistance of other law enforcement officers, searched it. (Curry Aff. at Entry #27-2). During the search, Curry and other officers located a small quantity of processed marijuana, a live marijuana plant, marijuana processing and packaging equipment, supplies for the growing and propagation of marijuana plants, over sixteen thousand dollars in cash separately bundled and named, a photo album depicting growing marijuana plants, and two handguns. *Id.*

As a result of the search of Plaintiff's residence, Defendant Curry prepared an arrest warrant charging Plaintiff with manufacturing marijuana in violation of South Carolina law. *Id.* The warrant was served on Plaintiff while he was already incarcerated at the Lexington County Detention Center on the trafficking charge

---

[2] According to the informant, but disputed by Plaintiff, Plaintiff asked him if the "weight" of the drugs was correct. (Informant Aff. at Entry #27-4). The informant told Plaintiff the weight was probably in excess of what had been agreed upon. According to Defendants, Plaintiff handed a bag to Capehart who then handed it to the informant. *Id.*; *see also*, Asbill Aff. The bag contained over twenty thousand dollars in cash. However, because these facts are disputed, the undersigned has not considered them in the below analysis.

previously made by Defendant Asbill. *Id.* Plaintiff was subsequently indicted by the grand jury in federal court. *Id.* Plaintiff testified in his deposition that he forfeited the sixteen thousand dollars seized during the search of his residence in exchange for the United States Attorney's dismissal of the charges pending against him. (*See* Dolan Dep. Excerpts at Entry #27-8).

Plaintiff raises three claims of violation of his Fourth Amendment rights: (1) unlawful seizure during his arrest on August 31, 2007; (2) defects in the warrant used to search his residence; and (3) the evidence obtained from the search and seizure was illegal and inadmissible. Plaintiff also contends that the defendants engaged in an illegal conspiracy and malicious prosecution in his arrest. Finally, plaintiff asserts that his Fourteenth Amendment rights were violated as a result of the continuing prosecution without probable cause.

In their motion for summary judgment, defendants contend that none of the plaintiff's constitutional rights have been violated. The defendants also assert they are entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In his objection memorandum, the plaintiff essentially repeats the same arguments made in his complaint that the probable cause relied on by the defendants was based on lies and falsifications. Plaintiff's objections may be summarized as follows:

A. Plaintiff submits that the confidential informant's affidavit was not created until September 6, 2009, after the plaintiff's state and federal charges were dismissed.

B. As to defendant Curry's request for a search warrant, plaintiff asserts that the Report failed to consider "that at some point Curry knew his sworn information was false, but still continued to press the case." Plaintiff also asserts that the defendants could not have acted in good faith in remaining silent about the alleged false information.

C. The plaintiff next objects to the Report suggesting that the Magistrate Judge failed to take into consideration the admitted falsification of evidence used to prosecute the plaintiff.

D. Plaintiff asserts that the Report fails to consider the harm to the plaintiff beyond his constitutional violations including the loss of his companion and mate.

E. Plaintiff argues that the Magistrate Judge failed to consider the deliberate and prolonged falsification and concealment of exculpatory evidence. Plaintiff contends that his plea involved only a civil forfeiture issue concerning the cash seized at plaintiff's residence and that the criminal charges (Counts 3, 4, and 5) were dismissed.

F. Plaintiff suggests that the Report failed to consider the ongoing offense as a result of the continued prosecution without probable cause.

G. Finally, the plaintiff asserts that the Report fails to consider the defendants' conduct and that the defendants cannot rely on qualified immunity.

The court has carefully conducted the required de novo review of all the parts of the Report and Recommendation to which objection has properly been taken and is constrained to overrule such objections and affirm the Magistrate Judge's recommendation. Although the plaintiff continues to refer to the actions of the defendants as acts that intentionally, or at least recklessly, caused an innocent man to be charged, the plaintiff overlooks the basic fact that, at the critical time when the undercover drug deal took place, the plaintiff had allowed himself to be in a position where it was logical for the officers conducting the undercover operation to logically conclude that the plaintiff was the "money man" that had

5

been alluded to when the drug deal was being arranged.

Plaintiff worked at a local car dealership and was in the passenger seat of the car when the drug deal was consummated. It had been reported to officers earlier that the money man would not "front" the money for the drug transaction, nor would he travel to Cherokee County to furnish the money for the purchase. When officers thus observed the plaintiff sitting in the passenger seat with Capehart, they logically concluded that plaintiff was, in fact, the financier of the drug operation they were investigating. On this record, the court agrees with the Magistrate Judge that probable cause existed for the arrest of the plaintiff at that time.

The subsequent search of the plaintiff's house was based upon his arrest as a participant in a drug trafficking crime. There was also probable cause for this search. The fact that the charges against Dolan were ultimately dismissed—on the condition that plaintiff forfeit certain properties to the government—is not of controlling significance in determining whether plaintiff's constitutional rights were violated.

The fact that the affidavit of the confidential informant was not prepared until after the plaintiff's criminal charges were dismissed is not critical either. It is frequently necessary in controversies to reconstruct what happened by way of a sworn affidavit and, although the court should obviously view the affidavit with some skepticism, the court finds no basis for disregarding it entirely.

In sum, this court agrees with the Magistrate Judge that the plaintiff's constitutional rights were not violated. Moreover, even if a constitutional violation occurred, the

defendants are protected by the doctrine of qualified immunity.

For all the foregoing reasons, the objections are overruled, and the Magistrate Judge's Report and Recommendation is incorporated herein by reference. The defendants' motion for summary judgment is hereby granted and this action is dismissed with prejudice.

IT IS SO ORDERED.

September 16, 2010  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge